STATE ex Rel. LEWIS AND CLARK COUNTY, Plaintiff, *v.* STATE BOARD OF PUBLIC WELFARE et al., De-FENDANTS.

(No. 8,244.)

(Submitted July 21, 1941.   Decided September 26, 1941.)

[117 Pac. (2d) 259.]

Mr. *J. Miller Smith,* County Attorney of Lewis and Clark County; *Mr. Leonard A. Schultz,* County Attorney of Beaverhead County; *Mr. Fred W. Schmitz,* County Attorney of Broadwater County; *Mr. J. W. Lynch,* County Attorney of Chouteau County, and *Mr. W. W. Lessley,* County Attorney of Gallatin County, and *Mr. John G. Brown,* of Counsel, submitted a brief; *Mr. Smith* argued the cause orally.

*Mr. Walter P. Coombes* and *Mr. Harry L. Burns,* for Defendants, submitted an original and a supplemental brief and argued the cause orally.

*Mr. John W. Bonner,* Attorney General, and *Mr. Clarence Hanley, Amici Curiae,* submitted a brief and argued the cause orally.

*Mr. Cleveland Hall,* Chief Deputy County Attorney of Cascade County, for Cascade County, intervener, argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is a proceeding in mandamus to compel defendants to apportion a $250,000 appropriation. It calls for an interpretation of House Bill No. 366, found on pages 391 et seq. of the Laws of 1941. That Act carries appropriations in definite amounts for each of the following purposes: Old age assistance, aid to needy dependent children, aid to the needy blind, child welfare services, grants to counties, and general relief and contingencies. The particular appropriation involved is found in paragraph (e) of section 2 and section 4, reading:

"For grants to counties to supplement county poor funds, to be apportioned by the state department of public welfare in inverse proportion to the average taxable valuation per capita, with county population as shown by the 1940 census exclusive of Indians, the sum of two hundred fifty thousand dollars ............$250,000.00."

Defendants take the view that they have authority to determine what counties are in need and make the grants accordingly. Acting under this view, they have found twenty-eight counties in need and threaten to apportion the $250,000 among those twenty-eight counties in inverse proportion to the average taxable valuation per capita exclusive of Indians. Plaintiff, not being one of the counties selected by defendants as entitled to a grant, brought this proceeding and takes the view that under paragraph (e) of sections 2 and 4 all counties are entitled to share in the appropriation.

The plain wording of the Act, when considered in connection with the history of Public Welfare Acts, impels us to hold that plaintiff's contention must prevail. Chapter 82 of the Laws of 1937 carried appropriations for old age assistance, aid to dependent children, needy blind, and child welfare ser-

vices and then contained this appropriation: "for the purposes of general relief and contingencies the sum of six hundred thousand dollars ($600,000.00) for each annual period as in this section above set forth." (Section IV, Part VIII, Chapter 82, Laws of 1937, page 192.) That chapter contained this clause: "It shall be within the authority of the state department of public welfare to make grants-in-aid from state funds to the county departments of public welfare for general relief purposes in proportion to the financial inability of the county to provide for relief assistance to its own residents." (Section IX, Part II, page 169.) House Bill No. 427 of the 1939 Session Laws, page 677, made similar appropriations and contained this specific appropriation: "For general relief and contingencies four hundred thirty-nine thousand five hundred dollars ........ $439,500.00." House Bill 419 of the 1939 Session Laws, found on page 671, contains similar appropriations for similar purposes including this specific appropriation: "For general relief and contingencies two hundred forty thousand dollars ............ $240,000.00."

Doubtless all these appropriations for general relief and contingencies were properly apportioned "in proportion to the financial inability of the county to provide for relief assistance to its own residents," as provided in Chapter 82, Laws of 1937. It is our view that House Bill No. 366 as to the appropriation provided for in subdivision (f) "for general relief and contingencies * * * the sum of one hundred fifty thousand dollars .......... $150,000.00" is still subject to those provisions of Chapter 82, Laws of 1937, and is properly apportioned on the basis of need. However, as to the appropriation contained in paragraph (e), we think the rule is plainly different. It does not provide for distribution on any basis of need. It carries its own specific directions as to the method of apportionment. If only the counties in need were to be the beneficiaries of this appropriation, then is it not reasonable to suppose that the legislature would have specifically provided that it be distributed in proportion to those needs rather than on the basis specified in it? We think it was plainly the intent of

the legislature that all counties should share in this appropriation on the basis specified in it. If this were not so, and if it intended that the distribution should be made on the basis of actual need, then it would have placed the $250,000 appropriation along with that contained in paragraph (f), for, as to that, the distribution has always been and still is on the basis of need.

If it is unwise to allow all counties to benefit by the appropriation, the fault lies with the legislature. It is competent for the state to aid the counties in caring for the deserving poor as the legislature may provide. (*State ex rel. Cryderman* v. *Wienrich*, 54 Mont. 390, 170 Pac. 942; *Mills* v. *State Board of Equalization*, 97 Mont. 13, 33 Pac. (2d) 563; *State ex rel. Normile* v. *Cooney*, 100 Mont. 391, 47 Pac. (2d) 637.) The power does not lie with the State Board of Public Welfare or with this court to devise what might be considered a better plan for the distribution of public funds to aid the counties in caring for the poor than that provided by the legislature.

There are other provisions of House Bill 366 that must be considered. Section 1 makes the appropriation of $2,206,500 "for public assistance, for administrative costs in the state department and the county departments of public welfare." Apparently the legislative intent as expressed in subdivision (e) was to aid the counties in the cost of county departments of public welfare. That is the only provision found in House Bill 366, that could accomplish that result within the purpose specified in section 1 thereof. If the legislature thought that only counties in need were entitled to administrative costs, it could easily have said so. This it did not do. All counties have administrative costs in their departments of public welfare. The state may, if it sees fit, assist the counties in bearing the administrative costs of their public welfare departments, as well as in carrying the burden of looking after the poor.

Contention is made that the clause "without hereby limiting the powers of the State Board of Public Welfare, as in this Act otherwise provided," appearing in section 2 of the Act, permits the board to select the counties in need. With this contention we cannot agree. This clause appears in the origi-

nal Act, Chapter 82, Laws of 1937, subdivision (d), section IV, part VIII. It has no different meaning now than it had then (sec. 93, Rev. Codes), and certainly it cannot be said, in view of the legislative history of the Act, that the legislature intended that this clause should affect the specific provision for apportionment contained in the Act in question.

It is argued that under section 6, the board's contention ██ must be sustained. That section provides: "Any money hereby appropriated for the state department of public welfare and specified for any account or purpose and not needed for such account or purpose may be transferred by the state board of public welfare to any other account or purpose under the authority of the department, except that no transfer from items (a), (b), (c), (d), (e) or (f) shall be transferred to item (g), administrative costs."

A first reading of that section would indicate that it was contemplated that the appropriation under paragraph (e) when not needed, might be transferred to another account or purpose. Such a conclusion is unwarranted. The exception contained in the last two lines of that section simply provides what may not be done. That is to say, it provides that no amount of the appropriation under paragraph (e) shall be transferred to item (g), administrative costs. This is simply to make certain that no part of it was to be used for the administrative costs of the state department. It makes a negative and not an affirmative provision affecting transfers. It does not carry any intimation that any of the amounts carried in item (e) were subject to transfer. The first part of section 6, authorizing transfers, has to do only with transfers appropriated to an account under the authority of the state department. The grants made under paragraph (e), after they have been made as therein provided, cease to be under the further authority of the state department, and hence are not subject to transfer.

Accordingly, the relief applied for should be granted. It is so ordered.

ASSOCIATE JUSTICES ERICKSON and ANDERSON concur.

MR. CHIEF JUSTICE JOHNSON Concurring in Part and Dissenting in Part:

I concur in the foregoing opinion so far as it grants a writ of mandate as prayed for, which was that the state board's resolution of July 3, 1941, distributing the $250,000 appropriation to only twenty-eight of the counties, should be rescinded, and that a resolution should be adopted apportioning the money to all fifty-six counties on the basis prescribed by the Act.

But I believe that we must also give effect to the purpose expressed in clear words in the title and in sections 1 and 3 of the Act that the entire state appropriation of $2,206,500 for each year was "for public assistance" rather than for gifts without reference to need for that purpose. "Assistance" means "act of assisting; help; aid; furtherance; succor; support" (Webster's New International Dictionary, Merriam-Webster, 2d ed.)—not an absolute gift regardless of need.

I believe also that we must give effect to the explicit provisions of section 6 that "any money hereby appropriated * * * and specified for any account or purpose and not needed for such account or purpose may be transferred by the state board of public welfare to any other account or purpose under the authority of the department," except for the purpose of administration expense. And I believe also that we must give effect to the provisions of sections 2 and 4, in which while tentatively dividing the $2,206,500 per annum among the six general purposes expressed by subdivisions (a), (b), (c), (d), (e), and (f), and the purpose for administrative cost expressed by subdivision (g), and while directing that the $250,000 per annum specified for the general purpose expressed by subdivision (e) should be divided among the fifty-six counties on a definitely fixed basis, the legislature provided that all of these specifications of amounts for the various relief purposes and accounts (without excepting those in subdivision (e)) were made "without hereby limiting the powers of the state board of public welfare, *as in this Act otherwise provided*" which obviously includes the provision of section 6 just referred to.

I cannot, therefore, concur in the statement of the majority that "the grants made under paragraph (e), after they have been made as therein provided, cease to be under the further authority of the state department, and hence are not subject to transfer" under section 6, which means that each county's absolute right to its share will vest immediately upon a determination of the amount regardless of need.

The board's answer to the petition gives the various county levies for the years 1939 and 1940 and the poor fund balances of June 30, 1940, and alleges that the conditions are about the same for the fiscal year ending June 30, 1941. Those figures show that fifty counties, namely, Beaverhead, Big Horn, Blaine, Broadwater, Carbon, Carter, Cascade, Chouteau, Custer, Daniels, Dawson, Deer Lodge, Fallon, Fergus, Flathead, Garfield, Golden Valley, Hill, Jefferson, Judith Basin, Lake, Lewis and Clark, Lincoln, Madison, McCone, Meagher, Mineral, Missoula, Musselshell, Petroleum, Phillips, Pondera, Powder River, Powell, Prairie, Ravalli, Richland, Roosevelt, Sanders, Sheridan, Silver Bow, Stillwater, Sweet Grass, Teton, Toole, Treasure, Valley, Wheatland, Wibaux and Yellowstone made the full six-mill poor fund levies for both years. It shows also that the other six counties made levies for 1939 of 6, 5, 5, 5.8, 3.5 and 3.2 mills respectively, and for the year 1940 of 5, 5, 5, 3.7, 4 and 3.92 mills respectively, making average levies for the two years of 5.5, 5, 5, 4.75, 3.75 and 3.56 mills, respectively. With these figures in mind let us consider the meaning of the $250,000 annual appropriation under consideration here, which in effect necessitates a state-wide poor fund levy on top of the county poor fund levies.

There are only two differences between subdivision (e) and the other subdivisions by which specific amounts are designated in sections 2 and 4 of the Act (with the sole exception of the appropriation for administrative costs, which is not here in question). The first difference is that instead of making the computation for the apportionment among the fifty-six counties itself, the legislature merely left the computation to the state board, carefully specifying the basis upon which

the apportionment should be made. The result was exactly the same as if the legislature had itself made the apportionment and specified the amount for each county, neither more nor less. Nothing in that provision for computation by the board instead of the legislature can have the effect of vesting the amounts in the counties immediately upon the apportionment.

The other difference is that subdivision (e) says that the amount specified is for "*grants* to counties to *supplement* county poor funds." The argument apparently is that "grants" means "absolute grants regardless of need," but that supposition is not sufficient to remove the effect of section 6 and of the words of sections 2 and 4 with which the specifications of amounts for the various purposes are made "without hereby limiting the powers of the state board of public welfare, as in this Act otherwise provided." Virtually the only difference between this Act and the appropriation Act for the preceding biennium is that the former designation of funds for crippled children was eliminated and this designation inserted for money to *supplement* poor funds. It was inserted there, in all respects equal to the other designations, as merely another purpose for which relief funds could lawfully be expended by the state board, subject to its power to transfer the designated amounts from unneeded purposes to needed purposes, in other words, so that it would be used only for relief. If the legislature had wanted to except this new relief purpose from the needs provisions governing the other designations, it could easily have said so.. But it very pointedly failed to do that, and this court has the power, not to substitute its notion of what the legislature should have done, but merely to give effect to the words used "according to the context and the approved usage of the language." (Sec. 15, Rev. Codes.)

But apparently the majority would wave aside the clear words of the title and of sections 1, 2, 3, 4 and 6 of the Act showing that public relief is the purpose of the entire appropriation, and would interpret the word "grants" in subdivision (e) of sections 2 and 4 as meaning "*absolute* grants" regardless of need for public relief. However, as noted above, we are re-

quired by law to interpret words according to their context. (Sec. 15, Rev. Codes.) We must, therefore, look to the context. Grants for what? "Grants * * * to *supplement* county poor funds." If the majority's construction is correct, each county's right to its share of the $250,000 for each year attaches immediately on enactment of the law, only the computation remaining to be made on an absolutely fixed and definite basis. If that is so, each county's amount should be included in its budget as a "probable revenue." (Sec. 4613.1, Rev. Codes.) If that is done the obvious effect will be to reduce the county poor fund levy, since it should be only enough in connection with the probable revenue from other sources to meet the probable need. That the parties to the action had this in mind is shown by their desire to obtain a ruling before the time for preparation of county budgets. Obviously in the case of the six counties already making less than the full six-mill levy, the result must be to reduce their levies further, and perhaps still more counties have reduced their levies this year in anticipation of the majority decision, thus further transferring their burden to the rest of the state. The presumption is that the commissioners of those counties have performed their duty, and their duty is to make only the levy necessary for the purpose, within the statutory limitation. Presumably they did so and made their levies accordingly, and apparently the estimates were correct, since at the end of the year the poor funds of the six counties showed balances in round figures of $49,500, $11,500, $5,000, $5,700, $26,600 and $14,600, respectively. Obviously if the amounts designated for the fifty-six counties are to go to them regardless of need, they must be included in the county budgets as "probable revenue," and must, at least in the six counties and perhaps in some of the others heretofore levying the full six mills, reduce the poor fund levies so as to keep the poor funds at the same level as if the state appropriation had not been made. That is obviously true since the pleadings state that the conditions shown by the figures have not materially changed.

The result of this will be that the state grants will be used, not to *supplement* the poor funds of those counties but to *relieve* them and to reduce the county poor fund levies. "Supplement" means "to fill up or supply by additions; to add something to; to fill the deficiencies of." (Webster's New International Dictionary, supra.) But the interpretation adopted by the majority would not add anything to the funds of those counties. It would merely be substituted for part of those funds, and would reduce the necessary county levies further.

Assuming that this court has the right to overrule the plain intent of the legislature as expressed by the title and by sections 1, 2, 3, 4 and 6 of the Act, and that it has the right to read in the word "absolute" before the word "grant" in subdivision (e), it certainly has not the right to read out the words "to *supplement* county poor funds." Yet that is the necessary result in at least six counties, if the amounts are to go automatically to all fifty-six regardless of need.

There are no other differences between subdivision (e) and the other relief provisions of the Act, and certainly the differences cannot have the effect attributed to them by the majority.

There is no difference in kind between the six purposes for which the legislature made the appropriation (omitting reference to the seventh purpose, administrative expense). All are for relief purposes to be expended upon the basis of necessity, so that if the entire appropriation for *supplements* to county poor funds, like the other sums mentioned, should not prove to be needed for the specified purpose, the surplus might become available as needed for assistance to the aged, the needy dependent children, the needy blind, or the child welfare service, or for *supplements* to other county poor funds where actually needed. Obviously relief money not needed for a particular purpose should not be spent regardless of need when it may be urgently needed for another relief purpose, and that is clearly why the legislature saw fit to give the state board the discretionary powers conferred by section 6. The fifty-six accounts or purposes expressed by subdivision (e) in nowise differ from

the other relief purposes or accounts expressed in the other subdivisions of sections 2 and 4. All of them are introduced by, and all are subject to the legislature's direct statement that in specifying the various amounts there was no purpose to limit the powers of the state board as "in this Act otherwise provided," without any exception; and all of them are therefore subject to the provision of section 6 that "*any* money hereby appropriated  *  *  *  and specified for *any* account or purpose and not needed for such account or purpose may be transferred by the state board of public welfare to *any other* account or purpose  *  *  *  except that no transfer from items (a), (b), (c), (d), (e) or (f) shall be transferred to item (g), administrative costs." In order to get around that clear legislative provision by the interpretation of subdivision (e) adopted by the majority, we will need in effect to add still another proviso to section 6 as follows: "And except, also, that no transfer from items (a), (b), (c), (d), or (f) shall be made to item (e), and that no transfer from item (e) shall be made to items (a), (b), (c), (d) or (f), or to any other account or purpose of item (e)." Such result seems to me quite an extensive piece of judicial legislation and I cannot concur in it.

Even if it did not involve such a tortured construction of the Act, I cannot follow the majority's reasoning. What reason in equity can there be in imposing upon the fifty counties which have already assumed their full local poor fund burdens an additional burden, partly for the benefit of the few counties which have not found it necessary to assume their own full local burdens? If the legislature had expressly made such an inequitable provision, we must perforce observe it if there is no constitutional inhibition; but since it has not done so we cannot properly read into the Act such an unjust intent, even if in order to do so we are not compelled to ignore what appears to be a contrary intent clearly expressed by the legislature.

When a county has made the maximum legal levy and its poor fund is still insufficient, the additional burden must perhaps fall upon the entire state to supplement that fund, but not when the county has not done its best to provide its own poor

fund and thus cannot show its need for help from without, to the detriment of the other fifty counties which have done their full part; and perhaps also to the detriment of some of those fifty counties which may prove to need still further *supplements* to their poor funds; and perhaps also to the detriment of needy aged, needy dependent children, needy blind, and those requiring child welfare service or general relief. The real relief need is too great for me to concur in what is obviously a diversion of relief funds to other than relief needs by merely substituting it for county funds, especially in the face of a clearly expressed legislative purpose that all these funds, without exception, be finally expended by the state board according to need.

I cannot, therefore, concur in the majority's statement that "the grants made under paragraph (e), after they have been made as therein provided, cease to be under the further authority of the state department, and hence are not subject to transfer" under section 6; although I do agree that the state board may immediately deliver the sums, apportioned as directed, to the twenty-eight counties whose need it has determined.

I have a serious doubt whether this question of the state board's continuing authority over the appropriation to supplement poor funds can properly be decided at all in this case. We are merely asked by the petition to command the state board to rescind its resolution apportioning the entire $250,000 for this fiscal year among twenty-eight counties, and to command it to adopt a resolution apportioning the amount among all fifty-six counties on the statutory basis. We are not asked to rule whether upon the making of the apportionment absolute rights will immediately attach to each county, and there are no allegations in the pleadings submitting that question to us. There is some reference to the need for the determination of the counties' rights but merely in the respects prayed for and as a reason for inducing this court to accept special jurisdiction. Reference was also made to the matter in the briefs and the oral arguments, but it is not my understanding that the issues

can be expanded by arguments, as they would be by evidence admitted without objection.

But assuming that the point is before us, it still does not follow that in granting the plaintiffs' petition for the desired writ with reference to the apportionment resolution, this court should go further and in effect order the board not to apply section 6 and the remainder of the Act to this part, or any other part, of the appropriation. The majority opinion says that the exception contained in the last two lines of section 6 (that no part of the money appropriated for relief purposes may be transferred to administrative costs) "makes a negative and not an affirmative provision affecting transfers." That is correct, but the remainder of section 6 is an affirmative and not a negative provision. And this court should not write in a further exception to the affirmative provision or direct the state board to disregard it, whether or not the question is presented by a petition attacking the board's apportionment resolution.

I therefore concur in the granting of the remedy prayed for in this proceeding, namely, that the state board rescind its resolution of July 3, 1941, and adopt a new resolution apportioning the $250,000 among the fifty-six counties on the basis prescribed by the Act, but I do not concur in the remainder of the court's decision, which in my opinion conflicts with the board's powers and duties under the appropriation Act.

MR. JUSTICE MORRIS:
I concur in the foregoing opinion of Mr. Chief Justice Johnson.

Rehearing denied October 3, 1941.